QUAIL ET AL. *v.* BANTA ET AL.

[No. 16,937. Filed May 24, 1942. Rehearing denied June 22, 1943. Transfer denied September 17, 1943.]

*Joseph M. Cooper, Eugene Cooper,* and *Arthur D. Cutler,* all of Madison, for appellants.

*Paul F. Dowell,* of Madison, *William C. Goodwyn, J. F. Williamson,* and *Frank E. Blackman,* all of Louisville, Kentucky, for appellees.

ROYSE, C. J.—Appellants brought this action in the Jefferson Circuit Court against appellees, Foster M.

Banta and Chester H. Banta, to declare a trust in certain real estate and to declare the appellee Foster M. Banta the trustee of said real estate for the heirs of James W. Banta.

Subsequent to the filing of the action, appellee Federal Farm Mortgage Corporation filed its petition to intervene which was granted.

The complaint was in one paragraph and alleged, in substance, that the appellants and appellees Banta and Banta were the children and sole heirs at law of James W. Banta, who died intestate in Jefferson County, Indiana, on March 15, 1938; that on the 27th day of April, 1935, said James W. Banta, a widower, was the owner in fee simple of, and resided on, a certain tract of land containing 83½ acres in said county and State; that on said date said James W. Banta, who was then 82 years of age and in poor health, was in debt to various parties and was desirous of securing a loan on said real estate with which to pay his said debts; that because of his advanced age and poor health he was informed and believed that he would be unable to secure a loan on his said farm, but that if he would convey said land to his son, Foster M. Banta, appellee here, who was about 50 years of age and resided in an adjoining county, his said son could apply for and probably secure a loan on said farm and thus secure the money needed by said James W. Banta for the purposes hereinbefore mentioned; that acting upon such advice, information and belief, said James. W. Banta did then and there execute and deliver to said Foster M. Banta a warranty deed for said farm, which was duly recorded in the records of Jefferson County, with the understanding and agreement then and there made that said land was being so deeded to said son as trustee for his said father for the sole purpose of securing a

loan as aforesaid, pursuant to which conveyance and agreement said son proceeded to apply for and obtained a loan on said land in the sum of $1,300 from the Land Bank Commissioner of Louisville, Ky., as security, for which said Foster M. Banta and Anna O. Banta, his wife, executed a mortgage to said Land Bank Commissioner on said 83½ acres, said mortgage being duly recorded on July 20, 1935, in the Mortgage Records of the county.

The complaint further alleged that the money derived from said loan was used in paying the indebtedness of said James W. Banta and in other ways for his own uses and needs; that said conveyance of said real estate was made by said James W. Banta to said son without any consideration whatever on the part of said grantee and for the sole purpose of securing said loan, and said grantee paid no money at that time nor since as consideration for said real estate; that by reason of the premises a trust in said real estate has resulted in favor of the heirs of said James W. Banta, and said Foster M. Banta holds said real estate in trust and as trustee for appellants and the other heirs of said James W. Banta or for his estate, and prays that a trust be declared and adjudged by the court in favor of these appellants and the other heirs of said James W. Banta, deceased, and that said Foster M. Banta holds said real estate in trust as trustee for said heirs and for the estate; and that said trust be declared terminated and the said trustee be required to execute a deed of conveyance of said real estate to the proper party or parties, or that the court appoint a commissioner to make such conveyance.

To this complaint appellees Banta and Banta filed their answer in general denial. The Federal Farm Mortgage Corporation filed its answer in two para-

graphs, the first in general denial and the second averring, in substance, that the mortgage was a valid first lien and that it contained a covenant by the mortgagors to pay all expenses incurred by the mortgagee in securing abstracts of title, etc., and to pay all court costs, expenses and attorneys' fees, and also averring that the corporation had been compelled to employ attorneys to enforce its rights under the mortgage and is entitled to recover said fees, averring that $100 is a reasonable fee for such attorneys for the services rendered, and praying that said mortgage be adjudged to constitute a first lien, and if the mortgaged property be sold it be sold subject to its mortgage lien, and for all costs herein, including attorneys' fees. The mortgage and note which it secures are incorporated in said answer.

The appellants were ruled to reply to the second paragraph of answer of appellee Federal Farm Mortgage Corporation, and subsequently filed their motion to dismiss and strike from the files said answer. Thereafter, appellants withdrew their action to strike out the answer of said appellee. No reply to said answer was filed by appellants. The cause was tried by the court and the court found for appellee Foster M. Banta, and that the property in question was received and acquired by him in fee simple for his own proper use and behalf, and not as trustee, and that said property was not burdened by any trust or trust agreement in favor of James W. Banta or any other person whatsoever. The court further found that the mortgage of the Federal Farm Mortgage Corporation was a valid mortgage and that the title of appellee Foster M. Banta was subject to the lien of said mortgage, and made an order allowing the attorneys of appellee Federal Farm Mortgage Corporation the sum of $25.

Motion for a new trial was seasonably filed, which was overruled by the court. The overruling of the motion for a new trial is the only error assigned here.

The brief of appellants in this court does not present or discuss in any manner specification (1) in the motion for a new trial, and is therefore deemed waived. Rule 2-17 (f), Rules of the Supreme and Appellate Courts.

The second specification of appellants' motion for a new trial is: Error in the assessment of the amount of recovery, in this, the amount is too large. In support of this specification they assert there is no evidence in the record as to what was a reasonable fee for the attorneys of appellee, Federal Farm Mortgage Corporation. They rely on the cases of *Simons, Administrator* v. *Beaver* (1896), 16 Ind. App. 492, 43 N. E. 972, 45 N. E. 673; *The Lake Erie and Western Railway Company* v. *Juday* (1898), 19 Ind. App. 436, 457, 49 N. E. 843; *The Anderson Glass Company* v. *Brakeman* (1898), 20 Ind. App. 226, 236, 47 N. E. 937; *The City of Warsaw* v. *Dunlap* (1887), 112 Ind. 576, 11 N. E. 623, 14 N. E. 568; *The Indianapolis & St. Louis Railway Company* v. *Watson* (1888), 114 Ind. 20, 35, 14 N. E. 721, 15 N. E. 824; *Flying Squadron Foundation et al.* v. *Crippen et al.* (1930), 201 Ind. 482, 508, 169 N. E. 843, which hold that where the evidence wholly fails to sustain the verdict or finding on a material issue, or where there is no legal evidence to support a verdict or finding upon a material question, then this court will reverse the judgment on the evidence. There can be no question regarding this principle.

In *Kitch* v. *Schoenell et al.* (1881), 80 Ind. 74, 76, our Supreme Court, in passing on this point, said:

"but where . . . there is no evidence . . . upon *the real question in issue,* it is as much the duty of this court to reverse the judgment below and remand the cause for a new trial, as it would be for any error of law occurring at the trial and excepted to." (Our italics.) In the instant case *the real question in issue* is whether or not appellee Foster M. Banta held the real estate involved as trustee for James W. Banta. If any question was presented by the second paragraph of answer it was merely incidental.

The record discloses that subsequent to the filing of the answer of appellee Federal Farm Mortgage Corporation, the appellants were ordered by the trial court to reply to this second paragraph of answer, and in compliance with this rule filed their motion to strike said second paragraph from the record for the following reasons: 1. It is a sham pleading. 2. It is frivolous. 3. It is wholly surplusage. 4. Its contents are wholly irrelevant. 5. Its contents are wholly outside the issues in this cause. The record further shows that before the trial court ruled on said motion to strike out, appellants withdrew said motion, and did not reply to said answer. Appellee Federal Farm Mortgage Corporation contends that the averments of its second paragraph of answer not being denied or controverted, must, under our statute, be treated as an established fact. Sec. 2-1055, Burns' 1933 provides: "Every material allegation . . . of new matter in the answer not controverted by the reply, shall, for the purpose of the action, be taken as true." Appellees' construction of this statute has been upheld in the following cases: *Adams, Administrator,* v. *Tuley et al.* (1891), 1 Ind. App. 490, 27 N. E. 991; *Kern* v. *Saul* (1895), 14 Ind. App. 72, 42 N. E. 496; *Roemler, Receiver,* v. *Dice* (1912), 49 Ind. App. 325, 97 N. E.

364; *Hibberd* v. *Trask et al.* (1903), 160 Ind. 498, 67 N. E. 179. Upon the authority of these cases we hold no question has been presented by the second specification in appellants' motion for a new trial.

The third and fourth specifications in appellants' motion for a new trial, the decision of the court is not sustained by sufficient evidence, and the decision of the court is contrary to law, require a consideration of the evidence.

The record discloses that James W. Banta was a man of about 80 years of age at the time of the transfer of the real estate involved in this action. He had purchased the farm in 1920, for which he paid $5,300.00, $2,600.00 in cash and the balance of $2,700.00 was secured by a mortgage on the property payable in annual installments. At the time of the purchase his wife was living. She died in April, 1931. One Andrew H. Lytle, a funeral director at Madison, Indiana, officiated at her funeral. Mr. Banta gave Lytle security in the form of a second mortgage on the real estate for the funeral bill. Lytle testified that he and the old man became friendly and that Lytle had from time to time loaned him money. He said he never pushed the old man for the money secured by the mortgage, but that some time thereafter he was approached by a man who wanted to buy his note and mortgage on the Banta farm. He then learned that this man owned the last note due on the first mortgage and Lytle subsequently bought it from him. He then suggested to Banta, who was old and worried, that he obtain a Federal loan on his farm to clean up his debts. Banta told him he could not obtain a loan because of his age. After this suggestion Lytle testified he went to the home of appellee Foster M. Banta on two or three different occasions to try to induce said appellee to take title to the property

and obtain a mortgage to pay off the debts of his father. At first this appellee was not inclined to do this and told Lytle he had done considerable for his father.

Appellee Foster M. Banta testified that when the purchase money notes began to come due, his father borrowed money from him and that he paid the notes amounting to $2,400.00 together with all interest thereon. When the last note for $300 became due it went delinquent because the son, on account of the illness of his wife, did not have the money to pay it. He testified that his father had agreed, when he paid these notes, to secure him by note and mortgage, but that the father never had given him the note or mortgage. Some time late in the winter of 1934 or early 1935 he said Lytle came to him and asked him to take title to the property and procure a Federal loan to pay off his father's debts which amounted to $1,300.00. He said he didn't tell Lytle that his father owed him any money because he did not consider it any of Lytle's business; that subsequently he and his father entered into a verbal agreement, by the terms of which he was to take title to the farm and keep it and that he was to obtain and assume a Federal mortgage for $1,300.00 and use the proceeds of this loan to pay off his father's debts. This agreement was entered into in the home of his father. This agreement was referred to in the presence of his brother and a Miss Perry in her office when the deed was made. He said that no one but himself had paid anything on the purchase price of the farm, and that, including the notes and interest and the amount of indebtedness he had assumed on the mortgage, he had expended on the farm between $4,000.00 and $5,000.00. He also said he permitted taxes to go delinquent to the extent of about $300.00

prior to the transfer because he wanted his father to make a settlement with him, but his father would not do so. He received none of the proceeds of the mortgage, but used them in paying various debts of his father, including the expenses of his mother's funeral. He gave it as his opinion the farm was worth from $3,000.00 to $3,500.00.

An official of the bank who held the purchase money notes testified that appellee Foster Banta had paid practically all of the notes.

Appellant Evelyn Quail testified that she had lived in her father's home since a few weeks prior to her mother's death. She had heard some discussion regarding a transfer of title to procure a mortgage, but did not know that the title had been transfered and the Federal mortgage consummated until about one year after it had been made, when she noted it on the tax duplicates.

The record discloses the transfer of title here involved was made in April, 1935, and the federal farm mortgage executed about ninety days later.

The secretary of the National Farm Association who conducted the negotiations for the mortgage and handled the disbursements made from the proceeds of said mortgage, testified that this money was paid directly to the creditors of James W. Banta, and none of it went to appellee Foster M. Banta.

James W. Banta died intestate on March 15, 1938.

Appellants contend that the evidence in this case shows such an intimate relation between the father and son that the law shifts the burden of proof to the appellee Foster M. Banta because it shows him to have been the dominant party. Therefore, they say, the burden is upon him to show by a fair preponderance of the evidence he acted in good faith and took no advantage of

his father or his heirs. They further contend that if said appellee paid the notes of his father or was his creditor in any way, he was then a general creditor of his father's estate in the absence of proof on his part that he held a lien or was in some manner a preferred creditor, and assert there is no such proof in the record. In support of this contention appellants cite the cases of *Huffman* v. *Huffman* (1905), 35 Ind. App. 643, 73 N. E. 1096; *Teegarden et al.* v. *Ristine* (1914), 57 Ind. App. 158, 106 N. E. 641; and *Wells et al.* v. *Wells et al.* (1926), 197 Ind. 236, 150 N. E. 361.

The facts in the cases cited by appellant are clearly distinguishable from the facts in the instant case. In the Huffman case, *supra*, the appellant and appellee were husband and wife respectively. The wife had obtained from her father an 80-acre tract of land and she was induced to convey this land to her husband because of his earnest solicitation and importunity, coupled with the threats that if she did not deed the land to him he would leave her and take their then minor children with him, and he refused to pay the taxes upon said land unless it was so conveyed. Subsequently, the husband sold the property. Later the parties separated but were not divorced, and the wife brought an action asking that the sums he had obtained for the property be decreed to be held in trust for her. The trial court found in favor of the wife. In sustaining this judgment this court held that the evidence not only showed the existence of a relationship which was in itself one of confidence, but that it also showed the influential position of the appellant as a matter of fact.

In the Teegarden case, *supra*, the evidence showed the appellant had been the attorney of appellee in the settlement of her husband's estate and had managed

her business subsequent to the death of her husband; that the appellee was a woman of little experience and this court held there was a fiduciary relationship existing, and therefore the judgment of the trial court for a rescission of the deed was correct.

In the Wells case, *supra*, the grantor was found by a jury, serving in an advisory capacity, to have been of unsound mind at the time of the transfer.

In the case before us it is uncontradicted that for many years prior to the transfer of the property involved here, appellee Foster M. Banta paid the obligations of his father; that his father had promised to secure him for these advancements but had refused to do so; that then when the father became further involved with a considerable amount of debts, including the last note on the purchase money mortgage, taxes, and the funeral expenses of his wife, at the suggestion of a friend the father, because he was unable to procure a mortgage to pay his debts, endeavored to get said appellee to take title to the property and procure funds with which to liquidate the father's indebtedness; that said appellee would not consent to this arrangement until he was given security for what he had done; that after negotiating over a period of several months it was finally agreed between the father and the son that if the son would take over the property and obtain sufficient money to pay his debts that he would give the property to the son. The uncontradicted evidence further shows that appellee Foster Banta had expended a sum considerably greater than the value of the farm. Therefore, even if the contention of appellants is correct, that in cases of this nature it is the duty of this court to weigh the evidence, we would not arrive at a different conclusion than that arrived at by the trial court.

The decision of the Jefferson Circuit Court is affirmed.

DOWELL, J.—Not participating.

NOTE.—Reported in 48 N. E. (2d) 841.